## FABBRO v. REESE.

No. 35011.   July 15, 1952.

*246 P. 2d 324.*

· Clint Braden, Wilburton, for plaintiff in error.

Bob Perdue, Wilburton, for defendant in error.

BINGAMAN, J.   This action was brought by the plaintiff, R. L. Reese, against the defendant, Louis Fabbro. In the first count of his amended petition plaintiff sought reformation of .a written contract or deed for the sale of timber on defendant's land, on the ground that the contract originally entered into had to be redrawn and that in redrawing it the scrivener omitted a part of the description. In a second cause of action he sought, in lieu of reformation, damages for $1,524.34 due to the refusal of the defendant to permit him to cut timber. The defendant in his answer denied that there was any misunderstanding or mistake on his part as to the timber that was being sold. The trial court submitted the issues to a jury which rendered a verdict in favor of plaintiff for the sum of $1,224.34, from which the trial court in rendering judgment deducted a credit of $600 for timber already cut and rendered final judgment in favor of plaintiff for $624.34, with interest from September 21, 1950, and costs. Defendant appeals.

Defendant first contends that the timber deed being on its face plain and unambiguous, the trial court erred in admitting parol evidence as to the original agreement between the parties and the execution by mistake of the timber deed containing a less number of acres, for the reason that it was an attempt to vary or change by parol evidence the terms of a written contract, citing Lehr v. Melton, 172 Okla. 150, 44 P. 2d 111; Rochelle v. Anderson, 113 Okla. 137, 243 P. .528, and other cases. We are unable to agree with this contention.

In Prudential Fire Insurance Co. v. Stanley, 191 Okla. 506, 131 P. 2d 88, we said:

"The defendant company also· invokes the parol evidence rule, sometimes known as the rule of merger and exclusion. The rule has no application to evidence introduced in actions for the reformation of instruments for the purpose of establishing a mutual mistake of the parties at the time. of the execution of the contract. The exclusion of such situations from the rule is recognized in the case of Badgett v. Oklahoma Life Insurance Company, 176 Okla. 86, 54 P. 2d 1059. See, also, 20 Am. Jur. 953 and 23 R. C. L. 366."

In Whittaker v. White, 169 Okla. 336, 37 P. 2d 247, we said:

"In an action for the reformation of a deed and contract of sale, parol evi-

dence is admissible to show the parties' intent and mutual mistake."

Defendant next contends that the case being one of equitable cognizance proof of the mistake must be clear and convincing to show not only the mistake but that it was mutual, and that in the instant case the evidence that the mistake was made or that it was mutual is not clear and convincing.

This requires a brief analysis of the evidence.

From the record it appears that Dell Terry, the agent of plaintiff who dealt with defendant, testified that he originally entered into a written contract for the purchase of 530 acres of merchantable pine timber located in Latimer county, for a consideration of $1,800; that said original contract provided that one tree in each acre should be marked and left uncut for seed purposes. According to the testimony of Terry and the scrivener, Tripp, this original contract was taken to his home by defendant with the understanding that it would be delivered after the trees had been marked. Thereafter, according to Terry, he and Fabbro marked the trees and met in the office of Tripp, where it was discovered that the contract had been altered by defendant and that it was necessary to rewrite the same. The witness Tripp testified that while engaged in copying the description of the land he was interrupted in some manner and by inadvertence and mistake neglected to put the full description in this second deed. This deed was executed by Fabbro, the old deed torn up and the new deed delivered to Terry who paid Fabbro the agreed price. Terry testified that Tripp assured him that the deed was just like the old one, and that he did not examine it carefully, but some five days later filed it for record without noticing that there was an error in the description. Both Terry and Tripp testified positively that the only contract which was discussed between Terry and Fabbro was for the purchase of 530 acres of timber. The rec-

ord further shows that at the time the first contract was made Terry gave to defendant a draft or bill of exchange drawn on Reese for $5, which contained a notation that it was made for the purchase of 530 acres. When the second contract was delivered Terry gave Fabbro another bill of exchange or draft for $1,795, containing the same notation. Both of these drafts were cashed by defendant. Terry also testified that $1,800 was a large price to pay for the 530 acres of timber which he was purchasing.

The testimony of the witness Tripp, a real estate dealer who testified that he was then endeavoring to sell the land of Fabbro which contained the timber involved in this controversy, and who apparently was a disinterested witness, was clearcut and positive that the incorrect description in the deed was due to his error and that the parties at all times they were in his office discussed only the sale by defendant to plaintiff of timber on the whole 530-acre tract, and that they never at any time discussed the purchase of a lesser amount. Defendant denied all this testimony, testified that at all times he was selling only the timber on the 160-acre tract described in the second deed, and that the notations on the drafts or bills of exchange given to him were not there at the time they were delivered to him and cashed by him. Some six months after the contract was made, when he discovered plaintiff's employees cutting timber on a part of the tract not described in the second conveyance, he stopped them from further work on the ground that they had no right to cut that timber. As we view the record his testimony is not convincing.

In this case both the jury and the trial court found in favor of plaintiff. The case was one of equitable cognizance and the verdict of the jury was only advisory, but it is of some significance that both the jury and the trial court, who saw the witnesses and heard them testify, believed the testi-

mony produced by plaintiff and rejected the denials of defendant.

In Harrell v. Nash, 192 Okla. 95, 133 P. 2d 748, we said:

"Evidence to sustain a judgment reforming a written contract must be clear, unequivocal, and decisive, but this does not mean that it must be uncontradicted; and the judgment of the trial court in such an action, reforming the contract, where the evidence is conflicting, should be given weight, and should be affirmed on appeal, unless the appellate court is satisfied that the standard of proof required has not been met and the conclusion reached is wrong."

In Crabb v. Chisum, 183 Okla. 138, 80 P. 2d 653, we considered a case where the factual situation was very similar to that involved in the instant case. The mistake in the notes in that case due to an error on the part of the scrivener, which was not noticed by the plaintiff until long subsequent to the date of the execution of the notes. In that case we affirmed the judgment of the trial court granting reformation, although the evidence was conflicting, pointing out that the trial court, which had the witnesses before it and had an opportunity to observe their demeanor and to determine their credibility, had decided this issue in favor of the plaintiff.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.