Mo. PACIFIC RD. Co. *v.* EMBERTON.

5-1890                                        327 S. W. 2d 726

Opinion Delivered September 21, 1959.

[Rehearing denied October 26, 1957]

*Pat McHaffy, B. S. Clark,* for appellant.

*Tom Gentry & William M. Dabbs, Jr.,* for appellee.

J. SEABORN HOLT, Associate Justice. Appellee sued appellant railroad company to recover damages resulting when one of appellant's freight trains struck an automobile driven by C. C. Bell (her then husband) at its street crossing in the city of Pine Bluff. A jury trial

resulted in a verdict in favor of appellee for substantial damages and from the judgment is this appeal. For reversal appellant cites five alleged errors as follows: "(1) The Defendant's Motion for a Directed Verdict Should Have Been Granted. (2) The Court Erred in Allowing Counsel to Argue Existence of Warning Devices at Other Crossings. (3) The Court erred in Not Declaring a Mistrial because Plaintiff Injected Insurance Coverage. (4) The Court Erred in Giving Plaintiff's Instructions Nos. 1, 3 and 6. (5) The Court Erred in Not Granting Defendant's Motion To Set Aside The Verdict and Dismiss."

After a careful review of the record presented, we have reached the conclusion that the trial court erred as alleged by appellant in allowing Mr. Gentry, appellee's attorney, to argue to the jury the existence of certain warning devices at the Cotton Belt railroad crossing at 3rd and State Streets, a block away from the 4th Street crossing here, after the court had refused to allow him to introduce in evidence photographs showing the condition of the Cotton Belt crossing and the existence of certain warning devices thereon. But for this error we would affirm since we find no other error.

Appellee based her suit on the following alleged acts of negligence on the part of the appellant railroad: failure to keep a proper lookout, failure to blow the whistle or ring the bell, operating the train at an excessive and unlawful rate of speed, and failure to provide a "signal device operated mechanically or otherwise at the crossing of 4th and State Streets to identify said crossing, or warn the deceased or others using the street, of an approaching train." The record shows, as indicated, that Mr. Gentry offered in evidence certain pictures of the 3rd Street, or Cotton Belt crossing, which was one block distant from the Missouri Pacific crossing in question at 4th and State Streets. On appellant's objection to their introduction for any purpose, the trial court properly sustained appellant's objection and the pictures were not introduced. Appellee's purpose in offering these pictures in evidence was stated in chambers by Mr.

Gentry, outside of the presence and hearing of the jury, in this language: ''I desire to introduce the photographs of the intersection of 3rd and State, which has been or will be identified as a crossing similar to the one at 4th and State and that the traffic is approximately the same at 3rd and State as at 4th and State. I desire to introduce the photograph because the photograph reflects that the Cotton Belt Railroad, whose tracks pass the intersection of 3rd and State, has constructed flashing lights, and flashing stop signs and railroad crossing signs and a gong to warn motorists passing over their tracks at 3rd and State that there is a train coming and it is dangerous to cross the intersection. It will be developed that these signals are automatic and my purpose of introducing this is to show that in contrast with what the Missouri Pacific Railroad Company, the defendant in this case, has done at 4th and State, not even showing by a simple cross-arm that there is a railroad crossing there, that an ordinary prudent person acting under like and similar circumstances would have placed gongs and warning devices and other mechanical means of warning motorists on this heavily traveled street in Pine Bluff that a train is approaching.''

It appears to us that Mr. Gentry's obvious purpose of showing the similarity of the two crossings was that since the Cotton Belt had seen fit to install signal lights and warning devices at its crossing, that this was evidence of negligence on the part of appellant, Missouri Pacific, for failure to do the same. The record shows that although the court properly excluded these pictures in evidence, it allowed Mr. Gentry, over appellant's objection, to argue to the jury the evidence that these pictures so graphically portrayed.

The record also shows that while Mr. Gentry was making his closing argument the following took place: MR. GENTRY: ''Don't you think they ought to put a $2.00 sign down there when at least, in other words, they ought to do just like the Cotton Belt has done down here on Third, (interrupted) MR. CLARK: Your Honor, I object to that. MR. GENTRY: Put a gong and lights and stop signs to give warning to those people,

(interrupted) MR. CLARK: Mr. Gentry should be admonished for bringing that up before the jury because that is not admissible, here. It has been ruled out here. THE COURT: It is a matter of argument. Go ahead. MR. GENTRY: They ought to do just like they did down, the Cotton Belt did down on Third and State— they have got a big gong, you know what they have got down there, they have got a gong, a big gong and lights flashing on them when a train is coming, it gives them plenty of notice, off and on, off and on, then it says stop right along down the pole there and the bell is ringing. Then they have got crossarms in addition to that that says 'railroad crossing.' They did not even put up a $2.00 sign, if you please.''

It appears to us that appellee did succeed in getting before the jury, in effect, all that the excluded pictures showed relating to the 3rd Street (Cotton Belt) crossing. While it would have been proper for appellee, in the circumstances, to have argued to the jury as evidence of appellant's negligence that it had failed to erect at its 4th Street crossing cross-arms on an upright which are generally used by railroads at crossings, it was highly improper for him to argue to the jury, over appellant's objection, that the Cotton Belt Railroad at its 3rd Street crossing had, in addition to the cross-arms, provided many other protective and warning devices and therefore, that appellant, by its failure to provide similar warning devices, in addition to cross-arms, at its 4th Street crossing, was guilty of negligence.

One act of negligence cannot be proved by another, *Coca-Cola Bottling Company of Helena* v. *Mattice,* 219 Ark. 428, 243 S. W. 2d 15. In the case of *Atchison, Topeka & Santa Fe Railway Company* v. *Aynes,* 271 P. 2d 312, 46 A.L.R. 2d 930, the Oklahoma Supreme Court, in a somewhat similar situation as here where it appeared that two railroad crossings were three blocks apart, that court held: ''In an action for bodily injuries received in a railroad crossing collision in which a principal claim of negligence was the failure of the crossing signal to work, and in which defendant introduced evidence to show the reliability of the signal system, but conceded

the possibility of failure of such a device, reversible error is committed in admitting in rebuttal evidence concerning operating failure of the same type of signal at a different crossing and at an indefinite time.''

For the error indicated, the judgment is reversed and the cause remanded.

McFADDIN, WARD & JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, (Dissenting). The majority is reversing the judgment in this case solely on alleged improper argument; and I think that in so doing the majority is reversing on a point that was not duly preserved of record. In order that my dissent may be understood I copy in full Pages 322 and 323 of the transcript, which are the only pages involving this matter of argument.

(Beginning of Page 322 of Transcript.)

''THEREUPON, MR. GENTRY, IN HIS OPENING ARGUMENT TO THE JURY, AMONG OTHER THINGS, MADE THE FOLLOWING ARGUMENT TO THE JURY, to-wit: ''MR. GENTRY: ***Now, let's look at these pictures. When you drive along there a stranger in town that has never been across that crossing before can not even tell that is a railroad crossing. That is Exhibit No. 2. There is not a way in the world you can tell that is a railroad crossing as one drives up there until they get right up there and you see the tracks. Wouldn't it have been simple and easy to put a little sign right up here, just a simple crossing marker, you have seen them at every country crossing in the State of Arkansas. They have got signs on railroad crossings way out in the country that you don't go across I reckon once a day. You will see at least other signs that say railroad crossing - wouldn't an ordinarily prudent person at least say on a $2.00 sign that it is a railroad crossing? They do at every place else. They have done it so much that the, well, you remember the old riddle, 'Railroad crossing, look out for the cars, let me hear you spell that without any R's', you remember that old riddle, but on your city, in your streets in the

City of Pine Bluff they don't even think enough about safety situation on your streets to put a $2.00 sign down there - it is not there, ladies and gentlemen of the jury, don't you think they ought to put a $2.00 sign down there when at least, in other words, they ought to do just like the Cotton Belt has down here on Third, (interrupted)

(End of Page 322 of Transcript.)

(Beginning of Page 323 of Transcript.)

"MR. CLARK: Your Honor, I object to that.

MR. GENTRY: put a gong and lights and stop signs to give warning to those people, (interrupted)

MR. CLARK: Mr. Gentry should be admonished for bringing that up before the jury because that is not admissible here. It has been ruled out here.

THE COURT: It is a matter of argument. Go ahead.

MR. GENTRY: They ought to do just like they did down, the Cotton Belt did down on Third and State - they have got a big gong, you know what they have got down there, they have got a gong, a big gong and lights flashing on them when a train is coming, it gives them plenty of notice, off and on, off and on, then it says stop right along down the pole there and the bell is ringing. Then they have got crossarms in addition to that that says 'railroad crossing'. They did not even put up a $2.00 sign, if you please.

---

"MR. CLARK: The defendants move for a mistrial on the ground that counsel for plaintiff went outside of the record in his closing argument concerning crossing signals and warnings at other crossing which have no bearing on this lawsuit whatsoever.

THE COURT: Motion overruled.

MR. CLARK: Note our exceptions."

(End of Page 323 of Transcript.)

I have copied exactly the entire two pages. I call particular attention that on top of Page 322, the reference is to *opening argument;* and that on Page 323 the motion for mistrial refers to something that occurred in the *closing argument.* The reference to the Cotton Belt Railroad crossing was made by Mr. Gentry in his *opening argument* to the jury. And after he made that reference to the Cotton Belt Railroad crossing there was no objection made or exception saved. After he concluded his opening argument, there is a line across the page, and the motion for mistrial was because it was claimed Mr. Gentry went outside the record "in his CLOSING argument". Mr. Gentry, as attorney for the plaintiff, in the summation to the jury made the opening argument, the railroad company made its argument, and then Mr. Gentry made the *closing* argument. It was in the *opening argument* that there was a reference to the Cotton Belt Railroad crossing; and after that reference *there is no objection made or exception saved,* according to the record in this case. It was only in regard to something that Mr. Gentry said in his *closing argument* (and what he said is not disclosed), that there was a motion made for a mistrial and the exception saved. I cannot see how the majority finds any reversible error duly preserved.

There is another reason why I think this case should not be reversed on the point with reference to the railroad crossing: that is because the case was tried in Pine Bluff, Arkansas, and it is reasonable to presume that the people on the jury knew something about the railroad crossings in Pine Bluff. The condition of those railroad crossings was a matter of common knowledge; and a lawyer in arguing to a jury can bring in matters of common knowledge, even though they have not been developed in the evidence. In 53 Am. Jur. Page 388, "Trial" § 481, in discussing the argument of counsel to the jury, this appears:

> "Matters of General Knowledge. - Even though evidence of such facts has not been formally introduced, it is proper for counsel to argue to the jury matters of common knowledge or matters of which the court will take judicial notice, . . . ."

To the same effect see 88 C.J.S. Page 355, "Trial" § 181, wherein the text states: "Counsel may properly argue and comment on self evident facts and matters of common knowledge outside the record". Surely the people on the jury knew something about the Cotton Belt Railroad going through Pine Bluff; and all Mr. Gentry said was, that the Cotton Belt had a warning bell and crossarms at its street crossing. I think what he said was a matter of common knowledge.

But, at all events, the reference to the Cotton Belt crossing was in the opening argument, and no objection was made or exception saved to the remark at that time. The only reference to a mistrial and the saving of exceptions is to something that occurred in the closing argument and which is not stated in the transcript.

I respectfully dissent from the reversal; Justices Ward and Johnson join in this dissent.